UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-CV-399-JMH

CARLOS RAMIREZ                                                  PETITIONER

VS:                **MEMORANDUM OPINION AND ORDER**

DEBORAH A. HICKEY, *Warden*                            RESPONDENT

      Carlos Ramirez is confined in the Federal Medical Center which is located in Lexington, Kentucky. Ramirez has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Deborah A. Hickey, the Warden of FMC-Lexington, is the named respondent in this action. Ramirez has paid the $5.00 filing fee.

      Promptly after the filing of a petition for writ of habeas corpus, the Court must review the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing 28 U.S.C. § 2254 Cases; (applicable to § 2241 petitions under Rule 1(b)). *See*, *e.g.*, *Patton v. Fenton*, 491 F.Supp. 156, 158-59 (M.D. Pa. 1979); *see also* 28 U.S.C. § 2243. The district court may summarily dismiss a petition if it appears from the face of the petition that the petitioner is not entitled to relief. *See* 28 U.S.C. § 2243; *Blevins v. Lamanna*, 23 F. App'x 216, 218 (6th Cir. 2001); *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970).

      For the reasons set forth below, the Court will deny the instant § 2241 petition with prejudice, based upon the fact that Ramirez is not entitled to the relief which he seeks. The

1

Court will also deny Ramirez's "Motion to Amend 'Complaint,'" R. 8, because the issues raised therein can not be asserted in the this proceeding.

CLAIMS

Ramirez challenges the Bureau of Prisons's ("BOP") decision to afford him only a six-month placement in a Residential Re-entry Center ("RRC") facility.[1] Ramirez demands to be placed in an RRC twelve to eighteen months prior to his projected release date.[2] He argues that by recommending him for only a six-month RRC placement, the BOP has violated the Second Chance Act of 2007 ("the Second Chance Act"), 18 U.S. C. § 3624(c), and his right to due process of law guaranteed under the Fifth Amendment of the United States Constitution.[3]

ALLEGATIONS OF THE PETITION

In his § 2241 petition, Ramirez alleges that the Second Chance Act requires the BOP to

---

[1] Prisoners near the end of their sentences are often placed in RRC's, previously known as Community Corrections Centers (CCC's) or "halfway houses" to live and work, under supervision, in order to facilitate their transition back into the community.

[2] According to the BOP website, Ramirez's projected release date is April 1, 2012. *See* www.bop.gov. The BOP has determined that Ramirez will be placed in an RRC six months prior to that time, which would be approximately October 1, 2011. By Ramirez' calculations, his RRC placement should commence either on October 1, 2010 (eighteen months prior to projected release date) or April 1, 2011 (twelve months prior to his projected release date).

[3] The Second Chance Act, 2007, Pub. L. No. 110-199, § 2519(a), 122 Stat. 657, 692-93 (April 9, 2008), amended 18 U.S.C. § 3624(c) to "authorize[] the BOP to consider placing an inmate in an RRC for up to the final 12 months of his or her sentence, rather than the final six months that were available pre-amendment." *Montes v. Sanders*, No. 07-07284, 2008 WL 2844494, at *1 (C.D. Cal., July 22, 2008). In considering RRC placement, the BOP must weigh the various factors enumerated in 18 U.S.C. § 3621(b). *See* 18 U.S.C. § 3624(c).

initially recommend a twelve-month RRC placement for federal inmates, and then "move downward." R. 2, p. 5. Ramirez alleges that twelve months in an RRC would provide him with the greatest likelihood of successful family and community reintegration authorized under the Second Chance Act and as determined in *Strong v. Schultz*, 599 F. Supp.2d 556 (D. N.J. 2009). He argues that because he is homeless and has no family in the United States, he needs "at least" twelve months in an RRC to have the "slightest chance at a successful transition" *Id*.

DISCUSSION<br>1. <u>Exhaustion Efforts</u>

Federal prisoners must exhaust their administrative remedies prior to filing a habeas petition under § 2241. *Feixian v. Northeast Ohio Corr. Center*, 473 F.3d 229, 231 (6th Cir. 2006); *Little v. Hopkins*, 638 F.2d 953, 953-54, (6th Cir. 1981).

Section 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request (a BP-9 form) to the Warden. *See id*. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal by filing a BP-10 form with the Regional Director, and if the inmate is not satisfied with the Regional Director's response, he may appeal by filing a BP-11 form with the Office of General Counsel. *See id*. § 542.15 (a)-(b).

Ramirez has demonstrated that he administratively exhausted his RRC placement claim through the first two levels: the institution (prison) and the BOP Mid-Atlantic Regional Office ("MARO"). On August 20, 2009, Warden Hickey denied Ramirez's BP-9 "Request for Administrative Remedy." R. 2-2, p. 5. She informed Ramirez that his request for a twelve-

month RRC placement had been individually assessed using the following five criteria set forth in 18 U.S.C. § 3621(b):

(1)  the resources of the facility contemplated;

(2)  the nature and circumstances of the offense;

(3)  the history and characteristics of the prisoner;

(4)  any statement by the court that imposed the sentence--

> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and

(5)  any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Applying that criteria to Ramirez, Warden Hickey determined that a 180-day (six-month) placement in an RRC would be sufficient to meet his needs. *Id.* She cited three reasons for placing Ramirez in an RRC for 180-days instead of twelve months.

First, she explained that Ramirez had participated in various programs that would assist his transition into society. Specifically, she noted that by his release date, Ramirez would have completed the Residential Drug Abuse Program ("RDAP"), and that Ramirez would then need to participate in the "Transitional Drug Abuse Treatment" services.[4] *See* R. 2-2, p. 5.

Second, she noted that by his release date, Ramirez would have obtained his GED (high

---

[4] The RDAP is a program through which certain federal inmates receive various incentives for involvement in drug abuse treatment programs. 28 C. F.R. §550.57. The BOP has discretion to allow an inmate a sentence reduction of up to one year if he convicted of a nonviolent offense and has successfully completed a substance abuse treatment program. 18 U.S.C. §3621(e)(2)(B).

school diploma equivalent). She stated that the BOP "offers a wide variety of programming designed to assist you with your reintegration into society." *Id.*

Third, Warden Hickey noted that Ramirez had been found guilty of three Incident Reports charging him with violating BOP rules. Warden Hickey characterized the findings of guilt as demonstrating "a lack of discipline and disregard for institutional rules." *Id.*

Ramirez appealed Warden Hickey's decision to the MARO. On September 24, 2009, K. M. White, Regional Director of the MARO, denied Ramirez's BP-11 appeal. *See* Response, R. 2-2, p. 8. White stated that Ramirez's Unit Team had conducted an RRC review using the five factors set forth in the Second Chance Act; that the Unit Team had determined that a 180-day placement was appropriate; that the recommendation conformed to both the Second Chance Act and BOP Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedures*; and that there was no reason to depart from the institution's decision. *Id.*

Ramirez attached to his § 2241 petition a copy of the BP-11 appeal which he states that he submitted to the BOP Central Office on October 7, 2009. R. 2-2, p. 9. Ramirez alleges that he did not receive a response from the Central Office. In a November 2, 2009 "Inmate Request to Staff," Ramirez asked FMC-Lexington staff to provide him with the address of the Lexington Post-Master. R. 2-2, p. 1. Ramirez attached a November 12, 2009, letter from United States Postal Services representative, suggesting that Ramirez contact his institution with respect to his claim of lost mail. R. 2-2, p. 24. In his § 2241 petition, Ramirez claims that "mail fraud" had been committed because if the BOP had not received his BP-11 appeal, it would have been returned to him in the mail, presumably marked as "undeliverable." R. 2, p. 7.

5

The Court will accept as true Ramirez's allegation that he submitted a BP-11 appeal on October 7, 2009, and assume for purposes of this analysis that the BOP's alleged failure to respond to the BP-11 appeal constitutes a denial of the claim. *See* 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."). The Court will therefore address the merit of Ramirez's claims.

## 2. Merits of the § 2241 Petition

Contrary to Ramirez's assertion, he does not have a constitutional right to serve the final twelve months of his sentence in a RRC. While the Second Chance Act *allows* the BOP to permit an inmate to serve as much as twelve months of his sentence in an RRC, 18 U.S.C. § 3624(c)(1), it does not automatically entitle, or guarantee, any prisoner to a twelve-month RRC placement term. *Demis v. Sniezek*, 558 F.3d 508, 514 (6th Cir. 2009).

The Second Chance Act merely requires that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed twelve months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c); *see also Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2009). The Second Chance Act requires the BOP to review inmates for RRC placement 17-19 months before their projected release dates, and inmates are to be individually considered using the five factors in § 3621(b). *Id.*

The Second Chance Act only directs the BOP to *consider* placing an inmate in an RRC

for *up to* a twelve month period. *Demis*, 558 F.3d at 514. Pursuant to the administrative regulations accompanying the Second Chance Act, the decision to place an inmate in pre-release community confinement is discretionary and will be "determined on an individual basis" according to the factors in 18 U.S.C. § 3621(b). Rules and Regulations, Department of Justice, Bureau of Prisons, 73 Fed. Reg. 62,440; 62, 441-42 (Oct. 21, 2008).

As the Second Chance Act allows no more than consideration of twelve-months' confinement in an RRC, (and does not guarantee a twelve-month term) Ramirez's argument that he should be afforded *eighteen* months in an RRC is completely unfounded. As for Ramirez's alternative demand for a twelve-month RRC placement term, the record reveals that his Unit Team did not abuse its discretion in rejecting that term and instead recommending a six-month RRC placement term.

Warden Hickey's "Response" to Ramirez's BP-9 "Request for Administrative Remedy" reveals that his Unit Team considered all aspects of his eligibility for RRC placement in compliance with 18 U.S.C. § 3621(b) and 18 U.S.C. 3624(c)(6)(A). Those factors consisted of the fact that, at that time, Ramirez had been participating in the RDAP; that he would continue to need access to additional services for drug problems; that he was in the process of obtaining his GED; and that he had a record of disciplinary infractions in the prison, which as the Warden explained, demonstrated a lack of respect for institutional regulations. The Unit Team made its determination on an individual basis and considered the appropriate factors in recommending that Ramirez be placed in an RRC for six months.

Ramirez's reliance on *Strong v. Schultz*, 599 F. Supp.2d. 556, is misplaced. In *Strong*,

the court ruled that the duration of the prisoner's pre-release placement had been limited to six months in accordance with a BOP Memorandum dated April 14, 2008, which had impermissibly limited staff discretion to designate a greater amount of placement time under the Second Chance Act. *Id.* at 563. However, on October 21, 2008, the BOP adopted regulations which removed the objectionable "limiting" criteria that had been included in the April 14, 2008, Memorandum.[5]

Nothing in the BOP's two responses to Ramirez's administrative appeals indicates that the decision was based upon arguably discretion-limiting criteria contained in the now defunct April 14, 2008, Memorandum. Consequently, the reasoning of *Strong* is inapplicable here, and in any event, that decision would not constitute binding precedent in this circuit.

Other district courts have recently upheld initial recommendations for six-month RRC placement where the Unit Team had considered the criteria contained in § 3621(b), and where neither extraordinary nor compelling circumstances justifying a longer RRC placement existed. *See Williams v. Outlaw*, No. 09-00075, 2009 WL 5184329, at *4 (E.D. A rk., December 22, 2009); *Petersen v. Drew*, No. 08-40, 2009 WL 4067794, at *3 (M.D. Ala., November 23, 2009); and *Loving v. Jett*, No. 09-01403, 2009 WL 2960710, at *3 (D. Minn., September 10, 2009).

---

[5]

In *Strong*, the court expressly stated, "[u]nlike the April 14, 2008, Memorandum, the [October 21, 2008, regulation] does not limit the discretion of staff to designate inmates to a [half-way house] for more than six months:

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, with the time-frames set forth in this part. 28 C.F.R. § 570.22 (October 21, 2008)."

*Strong*, 599 F. Supp.2d at 563.

In summary, Ramirez enjoys no guarantee of, or constitutional right to, a twelve-month RRC placement term. Ramirez's Unit Team properly complied with the Second Chance Act by applying the criteria of 18 U.S.C. § 3621 to the specific facts of his case. Ramirez's § 2241 petition will therefore be dismissed, with prejudice.

### 3. "Motion to Amend 'Complaint'"

On February 2, 2010, Ramirez filed a motion asking permission to amend "his civil Complaint." R. 8. In that filing, Ramirez complained about issues which he alleges surfaced at FMC-Lexington after he filed § 2241 petition in this proceeding.

Ramirez alleges that the following events transpired: (1) on December 4, 2009 an FMC-Lexington staff member announced that inmates could not speak Spanish; (3) on December 14, 2009, Case Manager Baker refused to accept a "cop-out" rom him; (4) on December 30, 2009, Ramirez complained to other staff members that he was having problems with Case Manager Baker; (5) on January 16, 2010, Unit Manager Talbert refused to discuss Ramirez's problems with Case Manager Baker; (6) on January 23, 2010, Ramirez was expelled from the RDAP, which expulsion would render him ineligible for a one-year early release under § 3621(b).

Ramirez has incorrectly characterized his initiating document, filed in this proceeding on December 11, 2009, as a "Complaint." Ramirez filed a *petition* under 28 U.S.C. § 2241, seeking habeas corpus relief, specifically challenging the manner in which his sentence is being executed by way of a six-month RRC placement versus a twelve-month placement. The issues about which Ramirez complains in his "Motion to Amend," do not relate to his § 2241 petition. They are either conditions of confinement claims, or, possibly, separate habeas claims.

If Ramirez wishes to assert a claim based on his expulsion from the RDAP, he must fully exhaust the claim through the BOP's administrative remedy process; file a separate habeas corpus proceeding, and either pay the $5.00 filing fee or seek pauper status. If Ramirez wishes to assert any claims relating to the conditions of his confinement, he must do so in a separate civil action filed under 28 U.S.C. § 1331, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[6] He is not permitted to assert prison condition claims in a § 2241 petition. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004).

The "Motion to Amend Complaint," R. 8, will be denied; the § 2241 petition, R. 2, will be denied; and this proceeding will be dismissed with prejudice.

## CONCLUSION

The Court being sufficiently advised, it is **ORDERED** as follows:

(1)     Ramirez's 28 U.S.C. § 2241 petition for a writ of habeas corpus, R. 2, is **DENIED.**

(2)     Ramirez's "Motion to Amend 'Complaint,'" R. 8, is **DENIED**.

(3)     This action is **DISMISSED WITH PREJUDICE**, *sua sponte*.

(4)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

---

[6] Just as with habeas corpus claims, Ramirez would be required to fully exhaust any conditions of confinement claim; pay the $350.00 filing fee; or seek pauper status.

This the 12th day of February, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge